**Gennifer FLOWERS, Plaintiff,**

v.

**James CARVILLE; George Stephanopoulos; Little, Brown & Company; and Hillary Rodham Clinton, Defendants.**

No. CV–S–99–1929PMP(LRL).

United States District Court,
D. Nevada.

July 21, 2003.

John Lukens, Rex Bell, Bell, Lukens, Marshall & Kent, Las Vegas, NV, Larry Klayman, Judicial Watch, Inc., Washington, DC, for Plaintiff.

Andrew Gordon, McDonald, Carano, Wilson, Las Vegas, NV, Patricia Lundvall, McDonald, Carano, Wilson, Reno, NV, Laura Handman, Matthew Leish, Davis, Wright, Tremaine, LLP, Washington, DC, for Little, Brown & Company and George Stephanopulous.

Paul Hejmanowski, Lionel, Sawyer & Collins, Las Vegas, NV, Jo Marsh, William McDaniel, McDaniel & Marsh, Baltimore, MD, for James Carville.

Walter Cannon, Rawlings, Olson, Cannon, Gormley & Desruisseaux, Las Vegas, NV, David Kendall, Gabriel Gore, Williams & Connolly, LLP, Washington, DC, for Hillary Rodham Clinton.

## ORDER

PRO, Chief Judge.

Plaintiff Gennifer Flowers commenced this diversity action on November 18, 1999, against Defendants James Carville, George Stephanopoulos, and Little, Brown & Company. The Complaint was amended on January 20, 2000, to add Hillary Rodham Clinton as a Defendant. The First Amended Complaint contained causes of action for defamation, false light, invasion of privacy, and conspiracy. In March of 2000, the Defendants filed motions to dismiss. Flowers filed motions for leave to amend her complaint in May and August of 2000. On August 24, 2000, this Court granted Defendants' motions to dismiss and denied Flowers' request for leave to amend her complaint. *Flowers v. Carville, et al.,* 112 F.Supp.2d at 1202 (D.Nev.2000). Over two years later, the Ninth Circuit Court of Appeals reversed this Court's dismissal of Flowers' defamation and false light claims, vacated the denial of Flowers'

motion for leave to amend the complaint and the dismissal of her conspiracy claims, and remanded the action for further proceedings. *Flowers v. Carville, et al.,* 310 F.3d 1118 (9th Cir.2002). On February 24, 2003, Flowers filed her Fourth Amended Complaint (# 130) alleging claims for defamation (Count I), false light (Count II), and conspiracy (Count III) against Defendants Carville, Clinton, Little, Brown & Company, and Stephanopoulos.

Presently before this Court is a Motion to Dismiss (Doc. # 135) filed by Defendant Clinton on March 26, 2003.[1] Also on March 26, 2003, Defendant Carville filed a Motion to Dismiss Count III of Plaintiff Flowers' Fourth Amended Complaint for conspiracy (Doc. # 137). Plaintiff Flowers filed a Joint Opposition to Defendants' Motions to Dismiss (Doc. # 139) on April 14, 2003. Carville filed a Reply in Support of his Motion to Dismiss Count III of the Fourth Amended Complaint (Doc. # 140) on April 28, 2003. Stephanopoulos and Little, Brown & Company filed Reply Points and Authorities in Support of their Motion to Dismiss (Doc. # 141) on April 28, 2003. Clinton filed a Reply in Support of her Motion to Dismiss (Doc. # 142) on April 28, 2003.

## I. BACKGROUND

In her Fourth Amended Complaint, Flowers realleges many of the facts set forth in her original Complaint filed over three years earlier. In particular, Flowers alleges that during William Clinton's 1992 campaign for election as President of the United States, Defendant Hillary Rodham Clinton created a "War Room" to coordinate attacks on people, including Flowers, "who were perceived to be adverse to Bill Clinton's candidacy and the interests of Defendant Clinton." (Fourth Am. Compl. ¶ 8.) Flowers alleges that sometime during the 1992 campaign it was revealed that she "was involved in a long-term sexual relationship with Bill Clinton and had audio tapes of conversations between herself and then-Gov. Clinton." (*Id.*)

Flowers further alleges that as part of the "War Room," Defendant Clinton conspired with Carville and Stephanopoulos "to defame Plaintiff to deflect attention from the truth and carried out acts in furtherance of that conspiracy." (Fourth Am. Compl. ¶ 8.) Flowers claims that Carville and Stephanopoulos, in concert with Clinton, continued to defame Flowers and hold her in false light from the 1992 presidential campaign until May 2002. (*Id.* ¶ 10.)

Flowers specifically alleges that Carville caused defamatory statements about her to be published in his book *All's Fair: Love, War and Running for President* and made misleading statements on *Larry King Live.* (Fourth Am. Compl. ¶¶ 12–13.) Flowers also claims that Stephanopoulos made misleading statements on *Larry King Live* and accused her of "selectively editing" tape-recorded conversations between Flowers and Mr. Clinton when Stephanopoulos appeared on CNBC's *Tim Russert Show.* (*Id.* ¶¶ 14, 16.) Flowers further alleges that Stephanopoulos's statements were published in Stephanopoulos's book, *All Too Human: A Political Education,* which was published by Little, Brown & Company. (*Id.* ¶¶ 5, 26.)

## II. LEGAL STANDARD

In considering "a motion to dismiss, all well-pleaded allegations of material fact

1. Defendant George Stephanopoulos joins in Parts I and II of Defendant Clinton's Motion to Dismiss, which relate to the conspiracy claim (Count III) alleged in Plaintiff Flowers' Fourth Amended Complaint. Defendant Little, Brown & Co. joins in Parts I, II and III of Defendant Clinton's Motion to Dismiss, which relates to all three claims contained in Plaintiff Flowers' Fourth Amended Complaint (Doc. # 136).

are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.1998) (citation omitted). However, the court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir.1994). There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997) (citation omitted). " 'The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims.' " *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Hicks v. Small*, 69 F.3d 967, 969 (9th Cir.1995).

## III. DISCUSSION

### A. CIVIL CONSPIRACY

#### 1. HEIGHTENED FIRST AMENDMENT SCRUTINY

■ In Nevada, an actionable civil conspiracy is defined as "a combination of two or more persons, who by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 662 P.2d 610, 622 (1983) (citing *Wise v. Southern Pac. Co.*, 223 Cal.App.2d 50, 35 Cal.Rptr. 652 (1963) and *Bliss v. Southern*

*Pac. Co.*, 212 Or. 634, 321 P.2d 324 (1958)). "A civil conspiracy claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged or planned the wrongdoer's acts." 16 Am.Jur. 2D *Conspiracy* § 57 (1998). "While the essence of the crime of conspiracy is the agreement, the essence of civil conspiracy is damages." *Id.* at § 50. The damages result from the tort underlying the conspiracy. In fact, "a cause of action for defamation is a necessary predicate to a cause of action for conspiracy to defame." *Id.* at § 59.

In *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board of Culinary Workers*, the Ninth Circuit Court of Appeals held:

> What we do hold is that in any case, whether antitrust or something else, where a plaintiff seeks damages or injunctive relief, or both, for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required.

542 F.2d 1076, 1082 (9th Cir.1976).

Defendants argue that the underlying tort of defamation alleged in this case is political speech. As a result, Defendants argue that the alleged conspiratorial conduct implicates the First Amendment and must be plead with particularity. (Clinton's Mot. to Dismiss at 6.) According to Defendants, this heightened standard requires Flowers to "set forth specific facts such as meetings, conferences, telephone calls or joint signatures on written recommendations to indicate conspiracy." (*Id.* at 7.) Flowers responds that Defendants' alleged defamation does not constitute political speech because it is an attack on someone not in the political arena. (Pl.'s

Joint Opp'n to Defs.' Mots. to Dismiss at 8.)

Even if the defamation claim alleged in Count I of Flowers' Fourth Amended Complaint falls under the *Franchise Realty Interstate Corp.* heightened pleading requirement, it is not clear that the heightened pleading standard would extend beyond the defamation claim and encompass the claim of civil conspiracy. *See Collins,* 662 P.2d at 622.

## 2. RULE 8(a)

All Defendants claim that Flowers' allegations are insufficient to state a claim for civil conspiracy. Pursuant to Fed.R.Civ.P. 8(a)(2), a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this section is to "avoid technicalities and to require that the pleadings discharge the function of giving the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved; the discovery process bears the burden of filling in the details." 6 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure,* § 1215, at 137 (2d ed.1990).

Defendants argue that even if the heightened pleading standard of *Franchise Realty* does not apply to this case, Flowers' civil conspiracy " 'complaint must set forth specific facts such as meetings, conferences, telephone calls or joint signatures on written recommendations *to indicate a conspiracy.'* " (Clinton's Mot. to Dismiss. at 11 (emphasis in original)) (quoting *Marino v. Cross Country Bank,* 2003 WL 503257 (D.Del.2003)). In *Marino v. Cross Country Bank,* the case from which Defendants draw the above principle, the District Court based its decision upon Delaware law. Although Nevada law and Delaware law are similar with respect to civil conspiracy, this Court has not found, nor have Defendants provided, authority that suggests that Nevada's courts adhere to similar pleading requirements.

In defining civil conspiracy, Nevada has looked to both California and Oregon law. *See Collins,* 662 P.2d at 622. Neither California nor Oregon employ a heightened pleading standard for conspiracy in cases where the underlying tort requires a heightened pleading standard. In California, "where a cause of action for civil conspiracy to defame the plaintiff is pleaded, explicit details concerning the manner in which the defendants conspired to publish the alleged defamatory matter are not required." *Bradley v. Hartford Accident & Indem. Co.,* 30 Cal.App.3d 818, 106 Cal.Rptr. 718, 722 (1973), *overruled on other grounds,* 50 Cal.3d 205, 266 Cal.Rptr. 638, 786 P.2d 365 (1990). A plaintiff's Complaint is adequate if it "sufficiently apprises the defendants of the character and type of the facts and circumstances upon which he relies to establish the conspiracy . . . ." *Id.,* 106 Cal.Rptr. at 722–23; *see also Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 28 Cal. Rptr.2d 475, 869 P.2d 454, 457 (1994) (quoting *Mox, Inc. v. Woods,* 202 Cal. 675, 262 P. 302, 303 (1927)) (stating the elements of a civil conspiracy). Similarly, a review of Oregon law persuades this Court that Oregon does not require a heightened pleading standard for any type of civil conspiracy. *See e.g., Yanney v. Koehler,* 147 Or.App. 269, 935 P.2d 1235, 1238 (1997) (listing the requirements of alleging a civil conspiracy); *Bliss,* 321 P.2d at 327–29 (discussing civil conspiracy); *Bonds v. Landers,* 279 Or. 169, 566 P.2d 513 (1977) (discussing civil conspiracy). Because no Nevada authority suggests that a heightened pleading requirement applies to civil conspiracy, and because the states Nevada has relied upon in defining civil conspiracy do not have such a requirement, the Court

finds there is no heightened pleading requirement for a civil conspiracy predicated upon defamation in Nevada.

Flowers has sufficiently pled the required elements of a civil conspiracy under Nevada law. Flowers claims that in 1992 Clinton organized and directed a conspiracy with Carville and Stephanopoulos to defame her. (Fourth Am. Compl. ¶ 8.) She further cites specific examples of allegedly defamatory statements made by Carville and Stephanopoulos. (*Id.* ¶¶ 12–16.) Finally, Flowers alleges that as a result of the conspiracy she was damaged. (*Id.* ¶ 21.) The alleged defamatory statements made from 1998—2000 are arguably consistent with such a conspiracy.

The Court must also reject Defendants' argument that the claim for conspiracy should be dismissed for failing to put them on notice of the allegations and grounds upon which they rest. Flowers alleges that Defendants Carville, Clinton, and Stephanopoulos entered into a conspiracy to defame her during the 1992 election campaign and continuing to 2000. Flowers' allegations rest on the connection of each Defendant with the 1992 Clinton Presidential election campaign and the allegedly defamatory statements made by Carville and Stephanopoulos. Whether Flowers will be able to prevail on these allegations cannot be determined on Defendants' Motion to Dismiss.

It is, however, unclear from Flowers' Fourth Amended Complaint whether she is suing Little, Brown & Company for conspiracy under Count III. Although the heading under the Fourth Amended Complaint states that Count III is alleged as to "All Defendants," Flowers makes no demand for judgment against Defendant Little, Brown & Company for conspiracy. More importantly, Flowers makes no allegations regarding the involvement of Defendant Little, Brown & Company in the alleged conspiracy. Therefore, Flowers'

purported claim for conspiracy (Count III) must fail as it relates to Defendant Little, Brown & Company.

## B. DEFAMATION

Defendants Clinton and Little, Brown & Company argue that Flowers has failed to state a claim for defamation against them in Count I of her Fourth Amended Complaint. In Nevada, "the general elements of a defamation claim require a plaintiff to prove: '(1) a false and defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.'" *Pegasus v. Reno Newspapers,* — Nev. —, 57 P.3d 82, 90 (2002) (citing *Chowdhry v. NLVH, Inc.,* 109 Nev. 478, 851 P.2d 459, 462 (1993)). Statements of opinion are generally not defamatory because "'there is no such thing as a false idea.'" *Pegasus,* 57 P.3d at 87 (quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339–40, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). However, an opinion could be defamatory if a speaker suggests defamatory facts in the opinion. *Id.* at 88.

Whether a statement is capable of a defamatory construction is a question of law for the court to decide. *Branda v. Sanford,* 97 Nev. 643, 637 P.2d 1223, 1225 (1981). "A statement is defamatory when, 'under any reasonable definition[,] such charges would tend to lower the subject in the estimation of the community and to excite derogatory opinions against him and to hold him up to contempt.'" *Posadas v. City of Reno,* 109 Nev. 448, 851 P.2d 438, 442 (1993). In determining whether a statement is actionable, "the court must ask 'whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact.'" *Pegasus,* 57

P.3d at 88. If it is possible for a statement to have different meanings, one of which is defamatory, the trier of fact will resolve the ambiguity. *Posadas*, 851 P.2d at 442.

■ "[A] defendant [cannot] be held liable for damages in a defamation action involving a public official plaintiff unless 'actual malice' is alleged." *Pegasus*, 57 P.3d at 90 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). "Actual malice has been defined as 'knowledge that it [the statement] was false or with reckless disregard of whether it was false or not.'" *Id.* at 90 (alteration in original) (quoting *New York Times Co.*, 376 U.S. at 280, 84 S.Ct. 710).

■ Clinton correctly points out that Flowers' Fourth Amended Complaint contains no allegations that Clinton made any statements, defamatory or otherwise. Instead, Flowers claims that Clinton directed Carville and Stephanopoulos to defame her as part of the conspiracy. Because Flowers has failed to allege that Clinton actually made a defamatory statement, the Court finds that she has failed to plead an actionable claim for defamation against Clinton in Count I of the Fourth Amended Complaint. *See Pegasus*, 57 P.3d at 90.

■ Flowers has, however, pled a sufficient claim of defamation against Defendant Little, Brown & Company. Although Little, Brown & Company correctly argues that it cannot be held liable for statements made by Defendants Stephanopoulos and Carville on the *Larry King* and *Tim Russert* broadcasts, Little, Brown & Company is the publisher of a book authored by Stephanopoulos that allegedly contains defamatory statements. (Fourth Am. Compl. ¶¶ 5, 15.) Moreover, Flowers, as a public figure for purposes of this controversy, has alleged the requisite malice by claiming that Little, Brown & Company "knew" that statements made in the Stephanopoulos book were false.

## C. FALSE LIGHT

■ Defendants Clinton and Little, Brown & Company also contend that Flowers has failed to state a claim of false light against them. There is little Nevada case law mentioning the privacy tort of false light. The Restatement (Second) of Torts states, "[o]ne who gives publicity to a matter concerning another that places the other before the public in false light is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652E (1977). "False light, like defamation, requires at least an implicit false statement of objective fact." *Flowers*, 310 F.3d at 1131 (citing Restatement (Second) of Torts § 652E(b)). Moreover, like defamation, false light requires actual malice. *Id.* at 1131. In Nevada, "[t]he false light privacy action differs from a defamation action in that the injury in privacy actions is mental distress from having been exposed to public views, while the injury in defamation actions is damage to reputation." *People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 111 Nev. 615, 895 P.2d 1269, 1273 n. 4 (1995) (quoting *Rinsley v. Brandt*, 700 F.2d 1304, 1307 (10th Cir.1983)), *overruled in part on other grounds*, 113 Nev. 644, 940 P.2d 134 (1997).

■ Flowers alleges that false statements were included in Stephanopoulos's book, which was published by Little, Brown & Company. (Fourth Am. Compl. ¶¶ 5, 15.) Furthermore, she alleges that Little, Brown & Company acted with actual malice and that she has suffered emotional distress. (Fourth Am. Compl. ¶¶ 31, 32.) Flowers has thus alleged all of the elements of an actionable claim of false light against Little, Brown & Company.

■ Flowers, however, has made no allegation that Clinton has made any false statements. Instead, she claims that Carville and Stephanopoulos acted as the "in-

strumentality" of Clinton. (Fourth Am. Compl. ¶ 31.) As the Ninth Circuit Court of Appeals stated, "[f]alse light ... requires at least an implicit false statement of objective fact." *Flowers*, 310 F.3d at 1131 (citing Restatement (Second) of Torts § 652E(b)). Flowers has failed to show this minimum requirement. Therefore, Flowers' claim of false light against Clinton must be dismissed.

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that the Motions to Dismiss filed or joined by Defendants (Docs. # 135, # 137, and # 140) must be granted to the following extent:

Plaintiff Flowers' claim for Defamation (Count I) is hereby dismissed as to Defendant Hillary Rodham Clinton;

Plaintiff Flowers' claim for False Light (Count II) is hereby dismissed as to Defendant Hillary Rodham Clinton;

Plaintiff Flowers' claim for Conspiracy (Count III) is hereby dismissed as to Defendant Little, Brown & Company.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that Defendants' Motions to Dismiss (Docs. # 135, # 137 and # 140) are denied in all other respects.

IT IS FURTHER ORDERED that the parties shall forthwith meet and confer and shall, not later than August 19, 2003, file a Joint Discovery Plan and Scheduling Order in full compliance with the provisions of Local Rule 26-1 of the Rules of Practice of the United States District Court for the District of Nevada.