Gennifer FLOWERS, Plaintiff,

v.

James CARVILLE, George Stephano-
poulos, Little, Brown & Company,
Hillary Rodham Clinton, Defendants.

No. CVS991629PMPLRL.

United States District Court,
D. Nevada.

Nov. 24, 2003.

Rex A. Bell, John P. Lukens, Bell Lukens Marshall & Kent, Las Vegas, NV, Michael J. Hurley, Larry Klayman, Paul J. Orfanedes, Judicial Watch, Inc., Washington, DC, for Flowers, Gennifer, Plaintiff.

Paul R. Hejmanowksi, Lionel, Sawyer & Collins, Las Vegas, NV, Jo B. Marsh, William A. McDaniel, McDaniel & Marsh, Baltimore, MD, for James Carville, defendant.

Walter R. Cannon, Rawlings, Olson, Cannon, Gormley & Desruisseaux, Las Vegas, NV, Gabriel E. Gore, David E. Kendall, Williams & Connolly LLP, Washington, DC, for Hillary Rodham Clinton, defendant.

Andrew P. Gordon, McDonald Carano Wilson, Las Vegas, NV, Laura R. Handman, Matthew A. Leish, Davis Wright Tremaine LLP, Washington, DC, Patricia K. Lundvall, McDonald Carano Wilson, Reno, NV, for Little, Brown & Co., George Stephanopulous, defendants.

### ORDER

PRO, Chief Judge.

For the third time since this action was commenced on November 18, 1999, the Court is called upon to address a series of dispositive motions filed on behalf of De-

fendants Hillary Rodham Clinton, James Carville and George Stephanopoulos.

Currently before the Court are Defendant Hillary Rodham Clinton's Motion for Summary Judgment ("Clinton's Motion") (Doc. # 147), filed on August 18, 2003; Defendant James Carville's Motion for Summary Judgment on the Conspiracy Claim ("Carville's Motion") (Doc. # 157), filed on September 9, 2003; and the Joinder of Defendant George Stephanopoulos in Defendants Hillary Rodham Clinton and James Carville's Motions for Summary Judgment as to the Conspiracy Claim ("Stephanopoulos' Joinder") (Doc. # 152), filed on September 5, 2003. On September 26, 2003, Plaintiff Gennifer Flowers filed Plaintiff's Opposition to Defendant Hillary Rodham Clinton's Motion for Summary Judgment and Defendant George Stephanopoulos' Joinder ("First Opposition") (Doc. # 163). On October 8, 2003 Flowers filed Plaintiff's Opposition to Defendant James Carville's Motion for Summary Judgment and Defendant George Stephanopoulos' Joinder ("Second Opposition") (Doc. # 167). Defendant Clinton then filed Defendant Hillary Rodham Clinton's Reply in Support of Her Motion for Summary Judgment ("Clinton's Reply") (Doc. # 175) on October 14, 2003. Defendant Stephanopoulos also filed a Reply of George Stephanopoulos in Further Support of Joinder in Defendants Hillary Rodham Clinton and James Carville's Motions for Summary Judgment as to the Conspiracy Claim ("Stephanopoulos' Reply") (Doc. # 174) on October 14, 2003.

## I. BACKGROUND

Flowers' original Complaint, filed November 18, 1999, asserted claims for defamation and false light invasion of privacy against Defendants James Carville, George Stephanopoulos and Little Brown, & Company. On January 20, 2000, Flowers amended her Complaint adding Hillary Rodham Clinton as a Defendant and alleg-

ing three new counts for disclosure of private facts, intrusion upon seclusion, and civil conspiracy.

On August 24, 2000, this Court dismissed Flowers' Amended Complaint. *Flowers v. Carville*, 112 F.Supp.2d 1202 (D.Nev.2000). The Ninth Circuit Court of Appeals affirmed the dismissal of most of Flowers' claims but ruled that some of the statements made by Stephanopoulos and Carville could constitute a cause of action for defamation and false light and were not barred by the statute of limitations. *Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002). Additionally, the Court of Appeals reinstated the civil conspiracy claim, noting that this Court had based its dismissal of that count on the absence of a cause of action about which Defendants could have conspired. *Id.* at 1131 n. 12.

Flowers' Fourth Amended Complaint ("Final Complaint"), filed on February 24, 2003, contains claims for defamation (Count I), false light (Count II), and conspiracy to defame and place Flowers in a false light (Count III). (Fourth Am. Compl. ¶¶ 23–39.) The Final Complaint is based on statements made by Carville and Stephanopoulos in books and interviews during the years 1998 through 2000. (*Id.* ¶¶ 13–16.) On July 21, 2003, the Court dismissed Flowers' claims for defamation and false light against Clinton, but denied her motion to dismiss the conspiracy claim, noting that Flowers had "sufficiently pled the required elements of civil conspiracy under Nevada law." *Flowers v. Carville*, 266 F.Supp.2d 1245 (D.Nev.2003).

Clinton now moves for summary judgment on the conspiracy count, claiming it is barred as a matter of law by Nevada's statute of limitations. Carville also moves for summary judgment on the same issue, and Defendant Stephanopoulos has filed a joinder in the motions of his codefendants.

## II. LEGAL STANDARD

A motion for summary judgment is a procedure which terminates, without a trial, actions in which "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A summary judgment motion may be made in reliance on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Id.*

The movant is entitled to summary judgment if the non-moving party, who bears the burden of persuasion, fails to designate "'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(e)). Thus, in order to preclude a grant of summary judgment, the non-moving party must set forth "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir.2001) (citing *Zenith Radio Corp.,* 475 U.S. at 587, 106 S.Ct. 1348).

Although the non-moving party has the burden of persuasion, the party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Metro Indus., Inc. v. Sammi Corp.,* 82 F.3d 839, 847 (9th Cir.1996). That burden is met by showing an absence of evidence to support the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548. The burden

then shifts to the non-moving party to set forth specific facts demonstrating that there is a genuine issue for trial. *Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505. In meeting this burden, "the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar,* 247 F.3d 986, 997 (9th Cir.2001) (internal quotation and citation omitted).

## III. DISCUSSION

Defendants' Motions for Summary Judgment require the Court to resolve two issues arising under Nevada's four-year statute of limitations governing civil conspiracy, Nev.Rev.Stat. 11.220. The first issue is when the limitations period begins to run. Although the statute stipulates the limitations period begins "when the cause of action shall have accrued," it does not specify which events will trigger an accrual. Nev.Rev.Stat. 11.220 (2003). The second issue is how the statute applies to a case of civil conspiracy to defame and hold in a false light.

Defendants argue under the discovery rule, recognized by the Nevada Supreme Court in *Siragusa v. Brown,* the cause of action accrues when a plaintiff discovered or should have discovered the injury. 114 Nev. 1384, 971 P.2d 801, 806 (1998). Furthermore, Defendants assert Flowers' conspiracy claim is barred under the discovery rule because she discovered the cause of action for conspiracy more than four years before she filed this suit. (Clinton's Mot. at 12–14.)

Flowers urges this Court to apply the last overt act doctrine, which starts the limitations period anew with each act in furtherance of the conspiracy and has been recognized by the United States Supreme Court in *Brown v. Elliott,* 225 U.S. 392, 401, 32 S.Ct. 812, 56 L.Ed. 1136 (1912).

Under the last overt act doctrine, Flowers' claim for conspiracy would not be barred since Carville and Stephanopoulos have made arguably defamatory statements within the limitations period. Alternatively, Flowers argues her suit is not time barred because even if she knew of the alleged conspiracy, she could not bring suit until she discovered her damages in 1998. (First Opp'n at 11, Second Opp'n at 11.)

**A. The Discovery Rule Applies**

When not considering a federal question, federal courts must apply the substantive law of the forum state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Statutes of limitation are considered substantive rather than procedural; therefore a federal court sitting on a diversity case must use the limitations law of the forum state. *Alberding v. Brunzell*, 601 F.2d 474, 476 (9th Cir.1979); *Klaxon Company v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Consequently, this Court must interpret and apply the Nevada statute of limitations to Plaintiff's claims.

"When interpreting state law, federal courts are bound by decisions of the state's highest court." *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir.1996) (quotation omitted). If the state has not addressed the particular issue, a federal court must use its best judgment to predict how the highest state court would resolve it "using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id.* (quotation omitted); *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812 (9th Cir.2002). "In making that prediction, federal courts look to existing state law without predicting potential changes in that law." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir.2002). Al-

though federal courts should not predict changes in a state's law, they "are not precluded from affording relief simply because neither the state Supreme Court nor the state legislature has enunciated a clear rule governing a particular type of controversy." *Air–Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir.1989) (quotation omitted).

The Nevada Supreme Court first adopted a rule specifying when a cause of action for civil conspiracy accrues in *Aldabe v. Adams*, a case brought by a woman charging her former husband and his lawyers with conspiring to defraud her. 81 Nev. 280, 402 P.2d 34, 35 (1965). In *Aldabe*, the Nevada Supreme Court noted that several theories existed as to what events would triggered accrual of a cause of action for civil conspiracy:

> One court suggests that the limitation period begins to run from the last overt act done in pursuance of the conspiracy, *Schessler v. Keck*, 125 Cal.App.2d 827, 271 P.2d 588; another, from the last overt act causing damage to the plaintiff, *Kansas City v. Rathford*, 353 Mo. 1130, 186 S.W.2d 570; a third, from each overt act causing damage, *Roche v. Blair*, 305 Mich. 608, 9 N.W.2d 861; and others prefer the date of injury or damage as the starting point. *Suckow Borax Mines v. Borax Consolidated Ltd.* (9 Cir.), 185 F.2d 196; *Rutkin v. Reinfeld* (2 Cir.), 229 F.2d 248.

*Id.* at 35–37.

The Nevada Supreme Court chose the last theory, "the date of injury or damage" rule, and rejected the first three, approving the language of the Second Circuit in *Rutkin:*

> The damage for which recovery may be had in a civil action is not the conspiracy itself but the injury to the plaintiff produced by specific overt acts. The charge of conspiracy in a civil action is

merely the string where by the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any act or acts.... It is at the time of the injury that the 'right to relief by action' arises and the statute therefore begins to run at the moment such injury occurs.

*Rutkin*, 229 F.2d at 252 (quoted by *Aldabe*, 402 P.2d at 37).

Subsequently, however, in *Siragusa v. Brown*, the Nevada Supreme Court partially overruled *Aldabe*, holding "an action for civil conspiracy accrues when the plaintiff discovers or should have discovered all of the necessary facts constituting a conspiracy claim." *Siragusa*, 971 P.2d at 807. *Siragusa* also involved charges of conspiracy between a former husband and his lawyers to remove marital property from the reach of a divorce settlement. *Id.* at 803–05. Under the earlier civil conspiracy rule of *Aldabe*, the ex-wife's claim would have been barred because her injury occurred more than four years prior to the date she filed her lawsuit. *Id.* at 805. But the Nevada Supreme Court held the discovery rule applied to the claim for civil conspiracy and remanded the case for a factual determination of when the wife discovered or should have discovered her injury. *Id.* at 807–08. The Nevada Supreme Court also overruled *Aldabe*, "to the extent [it] is inconsistent with our holding today." *Id.* at 807.

*Aldabe*'s rejection of the last overt act rule is not inconsistent with the holding in *Siragusa.* The cases cited by the *Aldabe* court support the conclusion that the Nevada Supreme Court would not apply the last overt act doctrine to this case. In *Schessler v. Keck*, a California case exemplifying the rejected last overt act theory, the court ruled the statute did not run on a conspiracy to defame the plaintiff because the last act of defamation was within the limitations period. 271 P.2d at 592. Although neither the *Siragusa* nor the *Aldabe* case deals with a conspiracy in which there are a series of acts to injure the plaintiff, the rejected *Schessler* case does. This implies the Nevada Supreme Court was aware of the kind of situation in which the last overt act doctrine might apply when it chose to reject the doctrine in favor of the date of injury rule.

Furthermore, *Rutkin v. Reinfeld,* cited with approval by the *Aldabe* court, did involve a continuing conspiracy in which the last overt act doctrine could have applied. 229 F.2d at 250–51. The *Rutkin* defendant conspired to benefit himself and others at the expense of his business partner and did so by entering into a fraudulent transaction in 1931. *Rutkin,* 229 F.2d at 250–51. The plaintiff did not discover the plot until 1948, when the defendant was involved in a second shady transaction which again benefitted defendant and others at the expense of the plaintiff, and which plaintiff alleged had been a part of the 1931 agreement between the defendants. *Id.* Noting the jury found that plaintiff should have discovered the first transaction sometime in 1932, the Second Circuit rejected plaintiff's claim for damages caused by the first transaction. *Id.* at 252 ("No allegation of conspiracy can thus jump an eight or nine years gap to make shambles of the statute of limitations and pervert its salutary purpose to set stale claims at rest.").

Taken together, the Nevada Supreme Court's rulings in *Aldabe* and *Siragusa* require this Court to apply the discovery rule. *Siragusa,* 971 P.2d at 807.

**B. Application of the Discovery Rule to Plaintiff's Claim for Conspiracy to Defame and Hold in False Light**

■ Although generally the time of discovery of a cause of action is a question for

the trier of fact, in cases where uncontroverted evidence irrefutably proves the plaintiff knew or should have known of the conduct, the time of discovery may be decided as a matter of law. *Nevada Power Co. v. Monsanto Co.,* 955 F.2d 1304 (citing *Mosesian v. Peat, Marwick & Mitchell & Company,* 727 F.2d 873, 877 (9th Cir.1984) *cert. denied* 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984)). Consequently, this Court may only grant summary judgment as a matter of law on Flowers' claim of conspiracy if uncontroverted evidence irrefutably proves Flowers knew all the facts necessary to constitute a claim for conspiracy to defame and to hold in a false light.

Defendants assert Flowers knew or should have known of the alleged conspiracy by April 1995 at the latest, and that consequently she filed her lawsuit several months after the expiration of the limitations period. As evidence Defendants offer quotations from Flowers' memoir *Passion and Betrayal,* published in April 1995, and her pamphlet *Setting the Record Straight,* published in 1994, alleging that a conspiracy to discredit her existed between members of the Clinton campaign team. Additionally, Defendants cite a book by Defendant James Carville and Mary Matalin, *All's Fair: Love, War, and Running for President,* published in 1994, and the 1993 movie, *The War Room,* a behind-the-scenes documentary of the Clinton campaign in which Carville and Stephanopoulos figure prominently. Defendants argue even if Flowers was not aware of the alleged conspiracy, *All's Fair* and *The War Room* contained enough information to make her aware had she exercised due diligence.

Flowers does not dispute Defendants' allegations regarding when she discovered the conspiracy; however, she does dispute whether she knew "all the necessary facts" to constitute a claim for civil conspiracy as

*Siragusa* requires. Flowers asserts "the gravamen of civil conspiracy is found in the overt act which results from the conspiracy and culminates in damaged to the plaintiff....no civil action lies for a conspiracy unless thereby an overt act that results in damage to the plaintiff." *Nalle v. Oyster,* 230 U.S. 165, 182, 33 S.Ct. 1043, 57 L.Ed. 1439 (1913). Although she knew of the conspiracy and overt actions by the defendants, Flowers argues she did not know the damages she would suffer until 1998. Therefore, Flowers insists she could not bring a claim before 1998 and that her action filed in 1999 is well within the four-year limitations period.

Defendants respond that under Nevada law "[a]n action accrues when the litigant discovers, or should have discovered, *the existence of damages,* not the exact numerical extent of those damages." (Clinton's Reply at 6 (quoting *Gonzales v. Stewart Title,* 111 Nev. 1350, 905 P.2d 176, 178 (1995), *partially overruled on other grounds by Kopicko v. Young,* 114 Nev. 1333, 971 P.2d 789, 791 (1998)) (emphasis added).) Additionally, Defendants quote Flowers' Second and Third Amended Complaints which state "[t]he acts and conduct ... by Defendants Clinton, Carville and Stephanopoulos were intended to, and have caused continuing substantial damage to Flowers' personal and professional reputations, and, as a consequence, Flowers has been, *since 1993,* foreclosed from pursuing her previously successful career as a professional entertainer...." (*Id.* at 7 n. 6 (quoting Pl.'s Second Am. Compl., Clinton's Mot., Ex. G at ¶ 22 and Pl.'s Third Am. Compl., Clinton's Mot., Ex. H at ¶ 23) (emphasis added).)

Flowers does not dispute that she knew of a conspiracy in 1995. She also does not dispute that she knew of overt acts to defame her and hold her in a false light in 1995. The issue remaining, therefore, is

when Flowers knew she had suffered actionable damages for defamation or false light.

### 1. Defamation Damages

Under Nevada law a person is liable for defamation when the plaintiff can prove the four elements described in § 558 of the Restatement (Second) of Torts:

a) a false and defamatory statement concerning another;

b) an unprivileged publication to a third party

c) fault amounting to at least negligence on the part of the publisher; and

d) either actionability of the statement irrespective of special harm, or the existence of special harm caused by the publication.

*Lubin v. Kunin,* 117 Nev. 107, 17 P.3d 422, 425 (2001) (citing *PETA v. Bobby Berosini, Ltd.,* 111 Nev. 615, 895 P.2d 1269, 1272 (1995), *modified on other grounds by Las Vegas Downtown Redev. Agency v. Hecht,* 113 Nev. 644, 940 P.2d 134, 138 (1997)). Special harm is defined in the Restatement (Second) as "the loss of something having economic or pecuniary value." Restatement (Second) of Torts § 575 comment b. Thus, under the Restatement § 558(d), a plaintiff has no claim for defamation unless she can prove she has suffered economic damages or that the defamatory statement is actionable.

A written or recorded statement[1] is actionable when it falls within the libel per se category. *Abbott v. United Venture Capital, Inc.,* 718 F.Supp. 823, 827 (D.Nev.1988) (citing *Talbot v. Mack,* 41 Nev. 245, 169 P. 25, 31–34 (1917)). Statements are libel per se under Nevada law when they "naturally tend to degrade [the plaintiff] in the estimation of his fellow men, or hold him out to ridicule or scorn, or would tend to injure him in his business, occupation or profession." *Talbot,* 169 P. at 34. Under *Talbot v. Mack,* the seminal case defining libel per se in Nevada, an accusation that the plaintiff lied is libel per se.[2] *Id.* at 33.

In addition to Nevada's requirement that a plaintiff prove libel per se or special damages, the First Amendment places additional restrictions upon a plaintiff's ability to bring an action for libel. In 1964, the Supreme Court held that public officials must prove their defendants made the defamatory statement with actual malice or "knowledge that it was false or with reckless disregard for whether it was false or not." *New York Times v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Later the Supreme Court extended the actual malice standard to public figures. *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 155, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

1. Defamation is divided into slander, spoken defamation, and libel, written defamation. Restatement (Second) of Torts § 568. "Broadcasting of defamatory matter by means of radio or television" is also libel. § 568A. All of the statements contained in the Final Complaint are libel because they were either spoken on a television show or written in a published book; therefore, the law of defamation by libel is the pertinent law in this case.

2. The *Talbot* court discusses several cases in which accusations of dishonesty play the central role: *Steele v. Southwick,* 9 Johns. (N.Y.) 214 (published statement that plaintiff was "no slouch at swearing falsely."); *Riley v. Lee,* 88 Ky. 603, 11 S.W. 713 (a published article accusing the plaintiff of "false utterance.") and *Peterson v. Western Union Telegraph Co.,* 65 Minn. 18, 67 N.W. 646 (The *Talbot* court approved the language of *Peterson,* finding that an accusation of dishonesty was "fairly susceptible of libelous meaning" because " 'if a man is dishonest, and apt to play one false, he merits the scorn an contempt of all honorable men.' ")

Flowers asserts that Defendants falsely called her a liar. (Final Compl. ¶¶ 12–16.) Under *Talbot*, an accusation of dishonesty is libel per se; therefore Flowers need not allege that she suffered economic damages. In *Passion and Betrayal* Flowers gives several descriptions of noneconomic damages that she suffered after the controversy over her story broke, from "emotional pain" and devastation to the dismay she suffered when accosted by strangers who accused her of taking money for her story. *Passion and Betrayal* at 112, 118 (1995). In *Setting the Record Straight* Plaintiff states *"I CRIED A LOT, AND SUFFERED TERRIBLE EMOTIONAL PAIN"* and *"THE WILD ACCUSATIONS AND HORRIBLE INSULTS ANGERED AND HURT BOTH ME AND MY FAMILY."* *Setting the Record Straight,* at 7, 9 (1994). Flowers' writings contain uncontroverted evidence that she knew or should have known she had suffered actionable damage to her reputation and attendant emotional distress sometime before 1995.[3]

Because Flowers has been adjudged by this Court and the Ninth Circuit Court of Appeals to be a public figure for purposes of this controversy, there are additional restrictions on her ability to bring a lawsuit for defamation. *Flowers v. Carville,* 310 F.3d 1118, 1129 (9th Cir.2002). Under *New York Times* and *Curtis,* her status as a public figure requires her to prove that Defendants made defamatory statements about her either knowing they were false or with reckless disregard for the possibility they might be false. *Id.* at 1129. This restriction would not have prevented her from bringing a lawsuit against Defendant Clinton. However, the evidence that Flowers knew enough to allege that Defendants Carville and Stephanopoulos were acting with actual malice is not as strong.

■ Flowers states in her 1995 memoir that Defendant Clinton knew of Plaintiff's affair with William Clinton. *Passion and Betrayal,* at 66, 68, 69. Additionally, Flowers admits to having watched the *Sixty Minutes* episode in which Hillary Clinton denied Flowers' story and called her a liar. *Id.* at 110–11. Taken together, this evidence proves Flowers knew or should have known she could meet the actual malice standard in an action for defamation against Defendant Clinton sometime before 1995.

■ Flowers does not make similar statements about Defendants Carville and Stephanopoulos. In *Setting the Record Straight* she alleges *"BILL'S SPIN DOCTORS ... DID EVERYTHING THEY COULD TO PAINT ME AS A ' LIAR', A 'GOLD DIGGER', A 'BIMBO' AND A*

---

3. Additionally, even if Defendants' assertion that Flowers' story was untrue was not libel per se, Flowers knew of special harm that would have allowed her to bring an action for libel per quod sometime in 1993. Flowers made allegations in her Second and Third Amended Complaints that she has suffered economic damages "since 1993." Pl.'s Second Am. Compl., Clinton's Mot., Ex. G at ¶ 22 and Pl.'s Third Am. Compl., Clinton's Mot., Ex. H at ¶ 23. Although the Final Complaint does not contain these allegations they remain as controvertible evidence. *Huey v. Honeywell,* 82 F.3d 327, 333 (1996) ("When a pleading is amended or withdrawn, the superseded portion ... remains ... as competent evidence of the facts stated, though controvertible....") *see also Sicor v. Cetus,* 51 F.3d 848, 859–60 (1995) ("Where, however, the party making the ostensible judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight."). Because Flowers has neither controverted her earlier allegations nor explained how their existence is reconcilable with her present assertion she did not know she had suffered any damages until 1998 they would be uncontroverted evidence of Flowers' knowledge that she had a cause of action for defamation should she choose to bring it.

'CRACKPOT' WHO HAD CONCOCTED SOME ELABORATE SCHEME TO KNOCK BILL CLINTON OUT OF THE RACE AND REAP SOME MASSIVE PERSONAL REWARD AND PUBLICITY." At 7 (italics and capitalization in original). In another portion of *Setting the Record Straight*, she asserts "*LIES THAT ARE TOLD ABOUT THE LIVES OF OTHER PEOPLE ARE ENTIRELY UNACCEPTABLE. ESPECIALLY WHEN THOSE LIES ARE COVERED UP AND THE OTHER PEOPLE INVOLVED ARE VICTIMIZED BY AN ORCHESTRATED CAMPAIGN OF CHARACTER ASSASSINATION.*" *Id.* at 9. In *Passion and Betrayal*, she talks about "a massive character assassination that went full-steam ahead from that day forward" (referring to the day the Clintons were interviewed on *Sixty Minutes*). *Passion and Betrayal* at 112. However, she does not allege that Defendants Carville and Stephanopoulos knew her story could be true or acted in reckless disregard of that possibility. This evidence does not irrefutably prove if or when Flowers knew Carville and Stephanopoulos acted with actual malice.

### 2. False Light Damages

■ In Nevada "the injury in [false light invasion of] privacy actions is mental distress from having been exposed to public view, while the injury in defamation actions is damage to reputation." *Flowers v. Carville*, 310 F.3d 1118, 1132 (9th Cir. 2002) (quoting *People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 111 Nev. 615, 895 P.2d 1269 (1995)) (citation omitted). Like defamation, false light requires actual malice. *Id.* Because the damages requirements for false light are less stringent while the actual malice requirement remains the same, the Court must reach the same result and find that Defendants Clinton, Carville, and Stephanopoulos have submitted uncontroverted evidence Flowers knew she had suffered damages to support a false light claim at least by 1995. However, Defendants Carville and Stephanopoulos have not submitted evidence irrefutably proving Flowers knew she had a claim against them that would meet the actual malice standard.

## IV. CONCLUSION

Having determined that the uncontroverted evidence before the Court establishes that Flowers discovered all necessary facts constituting a claim for civil conspiracy to defame and hold in false light, including facts necessary to meet the heightened burden of actual malice against Defendant Hillary Clinton by April 1995, the Court finds that Flowers' claims against Clinton are barred by Nevada's four-year statute of limitations under Nev. Rev.Stat. 11.220.

Although the same uncontroverted evidence also provides a basis for Flowers' claim of civil conspiracy to defame and hold in false light against Defendants Carville and Stephanopoulos, the evidence does not irrefutably prove when Flowers knew or should have known she had a cause of action that met the actual malice standard against these Defendants. Consequently, the Court finds summary judgment on whether Flowers' claim for conspiracy against Defendants Carville and Stephanopoulos is barred by the statute of limitations is not appropriate at this time.

IT IS THEREFORE ORDERED that Defendant Hillary Rodham Clinton's Motion for Summary Judgment (Doc. # 147) is hereby GRANTED and there being no just cause for delay, Judgment is hereby entered in favor of Defendant Hillary Rodham Clinton and against Plaintiff Gennifer Flowers.

IT IS FURTHER ORDERED that Defendant James Carville's Motion for Summary Judgment on the Conspiracy Claim

(Doc. # 157) and the Joinder of Defendant George Stephanopoulos in Defendants Hillary Rodham Clinton and James Carville's Motion for Summary Judgment as to the Conspiracy Claim are hereby DENIED.